# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NORTHWEST LENDING GROUP, LTD., et al., <br><br> Plaintiffs, <br> v. <br> PREMERA BLUE CROSS, <br><br> Defendant. | **Case No.** C07-5088 JKA <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

This matter comes before the court on Defendant's Motion for Summary Judgement (Doc.#11). The court has reviewed and considered all materials submitted in support of and in response to said motion as well as t he files and records herein.

This matter arises out of claims by plaintiff employer (Northwest) that plaintiff employee (Raquiza) was wrongfully denied medical coverage for their son, Asher Raquiza, under the terms of a group insurance policy maintained by Northwest with defendant Premera.

Plaintfiffs' complaint sets forth three causes of action: (1) Breach of Contract; (2) Breach of Implied Covenant of Faith and Fair Dealing; and (3) Violation of the Washington State Consumer Protection Act.

Defendant, Premera, moves for summary judgment asserting: (1) Plaintiffs' state law claims are preempted by ERISA (Employment Retirement Income Security Act), and (2) Plaintiffs' failure to exhaust administrative remedies.

The following facts appear to be undisputed:

1. Prior to the events giving rise to this action Joseph Raquiza and his family were covered under a group policy contract between his employer, Northwest Lending Group, Ltd. And Premera

Blue Cross.

2. The Group plan between Northwest and Premera provides for termination of coverage on the last day of the month for which subscription charges have been paid if the next monthly subscription charge isn't paid when due or within the grace period.

3. In late 2004 and 2005, there is a history of alleged premium delinquencies.

4. On January 24, 2005, Premera gave notice of cancellation of the policy for nonpayment of premiums.

5. Subsequent payments toward reinstatement of the policy were made by Northwest during 2005.

6. On December 22, 2005, Northwest sought reinstatement of the policy in writing.

7. On January 4, 2006, Premera wrote plaintiffs stating in part: "Thank you for renewing your health care benefit program with Premera Blue Cross. This is your confirmation for the group benefits you selected. "

8. On January 19, 2006, Asher Raquiza, son of Joseph Raquiza, underwent a surgical procedure at Mary Bridge Childrens Hospital in Tacoma, Washington.

9. Defendant, Premera Blue Cross, covered and paid the surgical expenses subject to the "deductable" provisions of the policy.

10. On February 21, 2006, Premera notified plaintiffs that the policy would be canceled effective January 31, 2006 based on alleged delinquent premium payments. The notice invites application for reinstatement by payment of premiums.

11. Thereafter plaintiffs changed health care providers. With that knowledge, Premera furnished plaintiffs a Certificate of Health Coverage dated March 9, 2006, confirming the inclusive dates of the Raquiza family coverage with Premera, specifically noting the coverage for Asher to have begun 07/17/2003 and ending 01/31/2006.

12. Thereafter, Premera recaptured payments made to the health care providers on behalf of Asher pursuant to their contractual relationship with those health care providers, notifying plaintiffs that the coverage had been terminated December 31, 2005.

13. On August 29, 2005 under GROUP: Notes – NORTHWEST LENDING GROUP, an internal notation was generated reading: "change cancel date from 1/31/05 to 12/31/05." The same note log reveals a September 9, 2008 "Refund Req Sent."

13. On September 8, 2006, Premera notified plaintiffs that the coverage was cancelled effective

December 31, 2005 and advised that a refund check for an "overpayment of $1,889.68" would be sent under separate cover.

14   On September 14, 2006, Premera issued a new Certificate of Health Coverage confirming the inclusive date of the Raquiza family coverage with Premera, specifically noting the coverage for Asher to have begun 07/17/2003 and ending 12/31/2005.

Defendant argues that plaintiffs' ERISA claims should be dismissed for failure to exhaust their administrative remedies. Alternatively, defendants' assert that should the court excuse the failure to exhaust, defendant's decision to terminate the coverage effective December 31, 2005 was not an abuse of discretion. Lastly, defendants' claim that no claim for breach of fiduciary duty may be maintained where plaintiffs have an adequate remedy under ERISA'S civil remedy provision.

## **FAILURE TO EXHAUST and ABUSE OF DISCRETION**

Defendant Premera notes that pursuant to ERISA there are administrative procedures for the resolution of disputes arising from benefits determinations made under ERISA-regulated plans, citing *Amato v. Bernard*, 618 F.2d 559 (9th Cir.1980). It is clear that federal common law requires the exhaustion of existing administrative remedies before presenting the claim to the court. The *Amato* court concluded that the federal courts have the authority to enforce the exhaustion requirements in suits under ERISA, and that a matter of sound policy, they should usually do so. The court went on to say

"We recognize of course that despite the usual applicability of the exhaustion requirement there are occasions when a court is obliged to exercise its jurisdiction and is guilty of an abuse of discretion if it does not, the most familiar examples perhaps being when resort to the administrative route is futile or the remedy inadequate."

Plaintiffs call the court's attention to, among other authorities, *Dishman v. UNUM LIFE Insurance Co. Of America*, 269 F.3d 974 (9th Cir) 2001. The *Dishman* court acknowledges a degree of confusion about the issue of exhaustion, but found the district court's waiver of the exhaustion requirement was not an abuse of discretion given the unique circumstances of the case. The same could be said in the case at bar.

Plaintiffs allege, and defendants do not deny, that plaintiffs attempted to resolve the dispute prior to instituting litigation, with no meaningful response from defendant.  More problematic are the internal activities of Premera after acknowledging the coverage and paying the claim.  The alteration of the coverage "end date" (some eight months later) justified by nothing more than the defendants' unilateral right to utilize "the discretionary authority to determine eligibility for benefits and to construe the terms used in this Contract" (considering the facts in the record before the court) could constitute an abuse of discretion,  such  that it could hardly be said this court would be abusing its discretion by waiving the exhaustion requirement.

It is difficult to accept Premara's argument given acceptance of the premium, payment of the claim, and subsequent acknowledgment of coverage through January 31, 2006, followed by a much delayed alteration of the coverage date, recapture of payments made on the child's behalf, and return of the premium after the client changed medical providers.  This is especially so given the defendant's rationalization that the company can do whatever it wants, because the policy allows it to interpret its own provisions.

**Defendants' Motion for Summary Judgment based on failure to exhaust, and acting without abusing their discretion is denied.**

### BREACH OF FIDUCIARY DUTY CLAIM

Defendant, Premera, accurately postulates that plaintiff has no independent claim for breach of a fiduciary duty.

**To the extent of the breach of fiduciary duty claim only, defendants' motion for summary judgment is granted.**

Dated this 13th day of July, 2007.

   */s/ J. Kelley Arnold*
J. Kelley Arnold, U.S. Magistrate Judge

1.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORDER
Page - 5